UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Case No. 1:23-cv-7712 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| COMPUTER TASK GROUP, | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| INCORPORATED, JAMES R. HELVEY III, | : **THE SECURITIES EXCHANGE ACT** |
| FILIP J. L. GYDÉ, DAVID H. KLEIN, | : **OF 1934** |
| VALERIE RAHMANI, RAJ RAJGOPAL, and | : |
| KATHRYN A. STEIN, | : **JURY TRIAL DEMANDED** |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Computer Task Group, Incorporated ("Computer Task Group or the "Company") and the members Computer Task Group board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Computer Task Group by affiliates of Cegeka Groep NV, a Belgian limited liability company ("Cegeka").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on August 23, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction Chicago Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Cegeka, will merge with and into Computer Task Group, with Computer Task Group continuing as the surviving corporation and as a wholly owned subsidiary of Cegeka (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 9, 2023 (the "Merger Agreement"), each Computer Task Group common share issued and outstanding will be converted into the right to receive $10.50 per each Computer Task Group share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Computer Task Group's outstanding common stock and will expire on September 20, 2023 (the "Tender Offer").

3. Defendants have now asked Computer Task Group's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Computer Task Group's financial projections relied upon by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Computer Task Group stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Computer Task Group's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Computer Task Group common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant James R. Helvey III ("Helvey") has served as a member of the Board since November 2015 and the Chair of the Board since September 2021.

11. Individual Defendant Filip J.L. Gydé has served as a member of the Board since March 2019 and is the President and Chief Executive Officer of the Company.

12. Individual Defendant David H. Klein has served as a member of the Board since September 2012.

13. Individual Defendant Valerie Rahmani has served as a member of the Board since November 2015.

14. Individual Defendant Raj Rajgopal has served as a member of the Board since December 2020.

15. Individual Defendant Kathryn A. Stein has served as a member of the Board since July 2021.

16. Defendant Computer Task Group is incorporated in New York and maintains its principal offices at 300 Corporate Parkway, Suite 214N, Amherst, New York 14226. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "CTG."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

19. Computer Task Group, together with its subsidiaries, offers information and technology-related services in North America and Europe. It operates through three segments: North America IT Solutions and Services, Europe IT Solutions and Services, and Non-Strategic Technology Services. The Company offers business process transformation solutions, including

4

advisory, data strategy, digital workplace, enterprise platforms, information disclosure, and regulatory and compliance services; technology transformation solutions, such as application development, automation, cloud, data management, enterprise platform implementation, and testing services; and operations transformation solutions comprising application support, IT operations support, cloud, and infrastructure. It also provides staffing services, including managed staffing, staff augmentation, and volume staffing services. The Company serves financial services, healthcare, manufacturing, energy, other industries, as well as technology service providers. Computer Task Group was incorporated in 1966 and is headquartered in Amherst, New York.

20. On August 9, 2023, the Company and Cegeka jointly announced the Proposed Transaction:

> HASSELT, Belgium/Limburg and BUFFALO, N.Y., Aug. 09, 2023 (GLOBE NEWSWIRE) -- Cegeka Groep nv ("Cegeka"), a leading European IT solutions company, and Computer Task Group, Incorporated (Nasdaq: CTG) ("CTG"), a leader in North America and Western Europe helping companies employ digital IT solutions and services to drive their productivity and profitability, today announced that they have entered into a definitive agreement under which Cegeka agreed to acquire CTG for $10.50 per share of common stock in an all-cash transaction, representing an implied equity value of approximately $170 million.
>
> CTG is a leading provider of digital transformation solutions with a strong client base across high-growth vertical markets, focused primarily on healthcare, finance, energy, manufacturing, and government. The Company had $325 million in 2022 revenue and $306 million in trailing 12-month revenue as of June 30, 2023. CTG operates in three segments: North America IT Solutions and Services, Europe IT Solutions and Services, and Non-Strategic Technology Services. Since 2018, CTG has transformed into a provider of recurring and higher-margin Solutions work, which has significantly expanded its gross margin from 19.1% in 2018 to 28.1% as of June 30, 2023.
>
> This transaction aligns with Cegeka's long-term strategic vision for growth and ambition. "This merger is a logical next step in the continuous growth journey of Cegeka. In CTG, we find a partner

that complements our customer and service portfolio and strengthens our capabilities and knowledge," said Stijn Bijnens, CEO of Cegeka.

"Together, we can deliver enhanced value to customers across North America and Europe. As we proceed with the acquisition process, we look forward to welcoming the employees of CTG across India, Colombia, Europe, and North America," said André Knaepen, Chairman of the Board of Directors of Cegeka.

"We are excited to enter into this transaction with Cegeka, which is a testament to the significant efforts we have undertaken to drive our transformation strategy to make CTG a pure-play digital IT solutions provider," said Filip Gydé, CTG President and CEO. "At CTG, our mission is to drive better, faster results for our customers with high-value digital transformation solutions. In Cegeka, we are pleased to have found a partner that will enable us to accelerate this important work. We are confident that joining with Cegeka is in the best interest of our employees, will continue to drive the high-value services and solutions our customers have come to expect, and will deliver immediate value to our shareholders."

**Financial Highlights**

The acquisition is expected to bring Cegeka to an annual turnover in 2024 of €1.4 billion, employing over 9,000 people in 18 countries. This transaction will move Cegeka from a leading European IT solutions company to a Global IT integrator.

**Transaction Details**

Under the terms of the merger agreement, a wholly owned subsidiary of Cegeka will commence a tender offer to acquire all outstanding shares of CTG for $10.50 per share of common stock in cash, representing an implied equity value of approximately $170 million. The offer price represents a 44.8% premium to the trailing 90-day volume weighted average stock price as of August 7, 2023. Both the Cegeka and CTG board of directors unanimously approved the merger agreement.

In connection with the execution of the merger agreement, certain CTG's directors and executive officers, holding approximately 8.8% in the aggregate of CTG's outstanding shares, entered into an agreement in which they agreed to tender all their shares in the tender offer.

> The closing of the transaction will be subject to customary conditions, including the expiration or termination of certain regulatory periods and the tender of shares representing at least two-thirds of CTG's outstanding common stock in the tender offer, as required by the merger approval requirements under applicable New York law. Upon the successful completion of the tender offer, Cegeka would acquire any shares of CTG's common stock not tendered through a second-step merger effected for the same per common share consideration. The transaction is expected to close later in 2023. Upon the successful completion of the tender offer, Cegeka's acquisition subsidiary will be merged into CTG, and any remaining shares of common stock of CTG will be canceled and converted into the right to receive the same $10.50 per share in cash.
>
> After closing, CTG will become a privately held company, and shares of CTG common stock will no longer be listed on any public market.
>
> \* \* \*
>
> **Advisors**
>
> Stifel is the exclusive financial advisor, and DLA Piper LLP is the legal advisor to Cegeka.
>
> KPMG assisted Cegeka in the financial, tax, and HR due diligence.
>
> Raymond James & Associates, Inc. is acting as financial advisor to CTG. Baker McKenzie LLP serves as the Company's legal advisor.
>
> \* \* \*

21. It is therefore imperative that Computer Task Group's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

22. On August 23, 2023, Computer Task Group filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished

to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Solicitation Statement fails to provide material information concerning financial projections by Computer Task Group management and relied upon by Raymond James in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Raymond James with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Computer Task Group management provided to the Board and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA, but fails to provide line items used to calculate the metric *and* a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

25. The Solicitation Statement also fails to disclose the Unlevered Free Cash Flows ("UFCF") and the line items used to calculate this metric that was relied upon by Raymond James to conduct its *Discounted Cash Flow Analysis*.

26. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading, and the Unlevered Free Cash Flows and the underlying line items.

*Omissions and/or Material Misrepresentations Concerning Raymond James' Financial Analyses*

29. With respect to Raymond James' *Selected Companies Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each company selected by Raymond James for its analysis.

30. With respect to Raymond James' *Selected Transaction Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each transaction selected by Raymond James for its analysis.

31. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.1% to 13.1%; (ii) the terminal values of the Company; (iii) the Company's weighted average cost of capital; (iv) the inputs and assumptions underlying the range of multiples from 6.5x to 7.5x as applied to 2025 Adjusted EBITDA; (v) the estimated total number of fully diluted outstanding shares of Computer Task Group as of August 4, 2023; (vi) the Company's cash balance as of June 30, 2023; and (vii) the projected UFCF of the Company for calendar years ending December 31, 2023 through 2025 and all line items used to calculate the UFCF.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. With respect to Raymond James' *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose the research analyst reports reviewed and the price targets published by each analyst.

33. With respect to Raymond James' *Precedent Premiums Paid Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected; and (ii) the premiums paid in those transactions.

34. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

37. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which

they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

39. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

40. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

41. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

43. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

46. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

47. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Computer Task Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Computer Task Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Computer Task Group, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Computer Task Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above

was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

53. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

  A.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  B.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  C.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 30, 2023        **MELWANI & CHAN LLP**

                     /s *Gloria Kui Melwani*
                     Gloria Kui Melwani (GM5661)
                     1180 Avenue of the Americas, 8th Floor
                     New York, New York 10036
                     Tel: (212) 382-4620
                     Email:  gloria@melwanichan.com

                     *Attorneys for Plaintiff*